# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| BRITTANY MAHONEY INDIVIDUALLY AND ON BEHALF OF MINOR CHILD MADISON SKINNER | CIVIL ACTION NO. 24-0537 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| WAL-MART LOUISIANA, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants Wal-Mart Louisiana, LLC and Wal-Mart, Inc. (collectively "Wal-Mart"). (R. Doc. 25-1). Brittany Mahoney, individually and on behalf of minor child Madison Skinner ("Plaintiff"),[1] filed a Memorandum in Opposition (R. Doc. 34 and hereinafter "Opposition"), and Wal-Mart filed a Reply (R. Doc. 36 and hereinafter "Reply"). For the reasons assigned herein, Wal-Mart's Motion is **GRANTED**.

## BACKGROUND

This lawsuit arises from a slip-and-fall accident that occurred on September 11, 2022, at the Wal-Mart Supercenter located at 6235 Westport Avenue in Shreveport, Louisiana. (*See* Petition for Damages ("Petition"), attached as Exhibit B to Wal-Mart's Notice of Removal and Jury Demand (R. Doc. 1) and as Exhibit A to Wal-Mart's Motion (R. Doc. 25-2)). On that date Ms. Skinner, her father and her

---

[1] Since this action commenced Madison Skinner has obtained the age of majority; however, Plaintiff has not filed anything to substitute Ms. Skinner as the actual plaintiff-in-interest in this case. Given the findings of this Court, that issue is rendered moot.

brother were shopping at the Wal-Mart Supercenter for groceries while her mother, Plaintiff Brittany Mahoney, waited for them in their car in the parking lot. R. Doc. 25-1 at 4, 5.

When her father and brother proceeded to the self-checkout area, Ms. Skinner left them to explore the candy displayed in an adjacent aisle. *Id.* In that area Ms. Skinner slipped on a clear liquid on the floor and fell, hitting her knee on the ground and her head on a display shelf. R. Docs. 25-1 at 4, 5, and 25-4 at 7, 8. Mr. Skinner investigated the area and saw the clear liquid but did not report it to any store employee. R. Docs. 25-1 at 4, 6, and 25-3 at 10. Immediately after Ms. Skinner's fall, she, along with her father and brother, exited the store and went to their car, where they told Plaintiff about the incident. R. Docs. 25-1 at 5, 25-3 at 11, and 25-4 at 14. Plaintiff and Ms. Skinner then re-entered the Wal-Mart Supercenter to file a report about the incident. R. Docs. 25-1 at 5, 25-4 at 16. Once inside the store, Plaintiff went to the customer service center to file a report while Ms. Skinner went back to the site of the fall, where she looked again at the candy and took a picture of the liquid on the floor. R. Docs. 25-1 at 6, and 25-5 at 22. At no point prior to filing the incident report did anyone in the family report the presence of the liquid or the fall to any Wal-Mart employee. R. Docs. 25-1 at 4, 25-3 at 10, and 25-4 at 17, 18.

Plaintiff completed an incident report with Wal-Mart employee Duston Allen. R. Docs. 25-1 at 6, 25-4 at 16, 17, and 25-6 at 2. Mr. Allen filled out a written report, took several color pictures of the clear liquid on the floor, and obtained security camera footage of the incident. R. Docs. 25-1 at 6, 7, and 25-6 Exhibits E-1, E-2 and

2

E-3. At no point did any family member or any Wal-Mart employee state that they knew what the liquid was, how or when it got on the floor, or how long it had been there, and Plaintiff and her family later affirmatively stated that they did not know any of those answers. R. Docs. 25-1 at 4-6, 25-3 at 12, 25-4 at 15, and 25-5 at 17. Plaintiff and her family then left the Wal-Mart Supercenter and this lawsuit followed.

In her Petition, Plaintiff contends that Wal-Mart either created the hazard or knew or should have known that the clear liquid was on the floor, that it should have taken measures to remove it or mark it for customer safety, and that Wal-Mart was negligent in failing to do so. R. Doc. 25-2 at 2, 3. Wal-Mart contends that it did not create the hazard or know of the liquid prior to the incident, and that Plaintiff has not presented any evidence to show that the liquid was present on the floor for any length of time prior to the incident, thus failing to satisfy a required element of her negligence claim. R. Doc. 25-1 at 7, 8.

## LAW AND ANALYSIS

**A. Summary Judgment Standard.**

The law pertaining to summary judgment is well settled. Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if

3

the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the non-movant must present evidence sufficient to establish the existence of each element of its claim as to which it will have the burden of proof at trial. *Id.* at 322.

**B. Louisiana Merchant Liability Statute.**

Subject matter jurisdiction in this matter is based on diversity; thus, Louisiana tort law applies. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) (holding that a federal court sitting in diversity jurisdiction applies the substantive law of the forum state). In Louisiana, merchant liability for slip and fall cases is governed by the Louisiana Merchant Liability Act which provides:

> A. A merchant owes a duty to persons who use its premises to exercise reasonable care to keep its aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury,

4

> death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of its cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

LA. REV. STAT ANN. § 9:2800.6. The plaintiff has the burden of proving all three elements under the Louisiana Merchant Liability Act. *Russell v. Morgan's Bestway of La., LLC*, 113 So. 3d 448, 452 (La. App. 2 Cir. 2013). The Fifth Circuit observed that this "statute places a heavy burden of proof on plaintiffs in slip and fall cases," which cannot be met by "[m]ere speculation or suggestion." *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007). Failure to prove any of the requirements will prove fatal to the plaintiff's case. *Id.* Furthermore, in addition to the three elements set forth in Section 9:2800.6(B), Plaintiff must prove the five elements of the well-established Louisiana tort law duty/risk analysis: (1) the defendant had a duty to conform its conduct to a specific standard; (2) the defendant failed to conform its conduct to the appropriate standard; (3) the defendant's conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Berg v. Zummo*, 786 So. 2d 708, 715–16 (La. 2001) (citing *Roberts v. Benoit*, 605 So. 2d 1032, 1051 (La. 1991)).

**C. Analysis.**

Wal-Mart's sole contention in its Motion is that Plaintiff has not fulfilled her burden under LA. REV. STAT. ANN. § 9:2800.6(B)(2); namely, of presenting any evidence that "[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence." R. Doc. 25-1 at 1, 11.

As noted above, the Louisiana legislature, in passing Section 9.2800.6, placed a very high burden on a plaintiff claiming a merchant was negligent in permitting a hazardous condition to exist in its store. *Bagley*, 492 F.3d at 330. Where, as here, a movant claims in a summary judgment motion that the non-movant has pleaded no facts establishing a *prima facie* case on any element of its claim, the non-movant must present actual evidence in rebuttal, mere allegations or speculation will not suffice. *Anderson*, 477 U.S. at 256. *See also Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (a non-movant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'.") (citing *Celotex*, 477 U.S. at 324).

**1. Whether Wal-Mart Created the Spill**

In her Opposition, Plaintiff references a "cooler," alleges that Wal-Mart "knew the cooler was out" and both "created this hazardous puddle" by not properly addressing the malfunctioning cooler and failed to "fix it or warn patrons" of the wet area. R. Doc. 34 at 5. As support she cites her own deposition; however, she fails to include that portion of her deposition in the record or explain how she would know

these allegations to be true. She also fails to attach pictures or any other evidence showing a cooler and its proximity to the wet area. The incident report completed by the Wal-Mart employee does not reference any cooler and the pictures taken by that employee of the incident area do not show any cooler. R. Docs. 25-6 Exhibit E-1 and E-2. Absent any actual evidence there was a cooler in the area, that it was malfunctioning, and that it could have created the wet area on the floor, her argument becomes mere allegation or speculation which fails to satisfy her evidentiary burden.

Plaintiff then claims that Wal-Mart should be held responsible for creating the wet area because it "maintains its own floors." (R. Doc. 34 at 6, citing *Savoie v. Southwest Louisiana Hospital Assoc., Etc.*, 866 So. 2d 1078 (La. 3d Cir. 2004)) (holding that a defendant that polished and waxed its floors could be held responsible for a hazardous situation arising from excess wax buildup); *Gray v. Wal-Mart Louisiana, L.L.C.*, 484 Fed. Appx. 963 (5th Cir. 2012) (holding that where a merchant is responsible for maintaining its own roof, creating holes in the roof or failing to fix holes in the roof that results in puddles on the store floor during rainy periods could make the merchant liable for creating those puddles); and *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 Fed. 3d. 742 (5th Cir. 2017) (same). In this case there is no claim, let alone evidence, of a leaky roof or that the wet area was caused by moisture originating from the roof, making those cases inapposite. With regard to *Savoie*, that case did not hold that merely being responsible for maintaining the floor is sufficient to create liability, it held that where the hazard was created by the merchant's affirmative and improper actions, in that case by excessive waxing without regular

7

stripping, then the merchant could be found to have created the hazard. Here, there is no evidence that Wal-Mart improperly maintained the floor or introduced the clear liquid during floor maintenance, and Plaintiff's argument is unpersuasive. To hold a merchant that sweeps, mops and otherwise maintains its own floors responsible for any hazardous condition on those floors, whether related to maintenance or not, would essentially result in strict liability, an outcome not contemplated by Section 9:2800.6. In summary, Plaintiff presents no evidence that Wal-Mart created the hazardous condition; accordingly, to defeat Wal-Mart's Motion she must show some evidence that Wal-Mart had actual or constructive knowledge of the liquid on the floor.

### 2. Whether Wal-Mart Had Prior Actual Knowledge of the Spill.

Plaintiff acknowledges that neither she nor Ms. Skinner knows when the clear liquid first appeared on the floor, where it came from, or how long it had been there, and that neither she nor anyone in her family advised Wal-Mart of the liquid prior to filing the incident report. R. Doc. 34 at 2. Nor does she cite any evidence that would show that Wal-Mart knew of the liquid on the floor prior to the incident. The record is devoid of any evidence that Wal-Mart actually knew of the liquid on the floor; thus, Plaintiff must show that Wal-Mart had constructive knowledge of the liquid to satisfy Section 9:288.6(B)(2).

### 3. Whether Wal-Mart Had Prior Constructive Knowledge of the Spill.

Proving constructive knowledge in a slip-and-fall case under Louisiana law is likely the highest point on the high hurdle established by Section 9:2800.6. The

statute itself is clear, as stated in the statutory definition: "'Constructive notice' means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." LA. REV. STAT. ANN. § 9:2800.6(C)(1). The seminal Louisiana case interpreting this definition is *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081 (La. 1997).[2] In *White*, the Louisiana Supreme Court stated:

> There is a temporal element included: 'such a period of time ...' The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. ... Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period.

*White*, 699 So. 2d at 1084. Courts have repeatedly cited *White* in requiring a plaintiff to present some affirmative evidence that a hazardous condition existed "for some period of time" prior to the fall. *See, e.g., Babin v. Winn-Dixie Louisiana, Inc.*, 764 So. 2d 37, 40 (La. 2000); *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2 Cir. 2003); *Oster v. Winn-Dixie Louisiana, Inc.*, 881 So. 2d 1257, 1261 (La. App. 5 Cir. 2004); *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330-31 (5th Cir. 2007); and *Finley v. Racetrac Petroleum, Inc.*, 137 So. 3d 193, 197 (La. App. 2 Cir. 2014). While difficult, a plaintiff's burden is not unattainable. As the court noted in *Allen*, evidence that "areas of the spill had dried, that there were shopping cart tracks or footprints in the

---

[2] The *White* opinion addressed an earlier version of Section 9:2800.6; however, the subsequent revision did not change the relevant language or that court's interpretation of Section 9:2800.6(B)(2), and as noted above courts regularly cite to *White* as controlling authority. *White*, 699 So. 2d at 1083 n.1.

9

liquid or that the liquid was dirty, evidencing earlier traffic, etc." might suffice to satisfy the temporal element. *Allen*, 850 So. 2d at 898.

In *Broussard v. Wal-Mart Stores, Inc.*, 741 So. 2d 65 (La. App. 3 Cir. 1999), the court of appeals found that the plaintiff had satisfied the temporal element by showing that the spill was "elongated, not uniform, and cover[ed] approximately three to four tiles, suggesting that it had spread over a period of time." *Broussard*, 741 So. 2d at 69. While the pictures taken by the Wal-Mart employee completing the incident report in this case also show the clear liquid spill being elongated and not uniform, covering several floor tiles, this case is distinguishable. In *Broussard*, the source of the spill was positively identified as a leaking bottle on a shelf above the spill, so that to become "elongated and not uniform" it must have had time to spread from its initial contact with the floor. In this case, the source of the spill was never identified, so there is no way to know if the shape of the spill would have changed over time.

All of the cases addressing the temporal aspect of the notice element require some evidentiary showing that it's likely the hazardous situation was present for some period of time such that the defendant could have learned of the problem, making the element of constructive notice a fact question. Here, we have no such evidence. Plaintiff presents no witness testimony, no pictures of footprints or cart tracks through the spill, no admission by an employee, no video recording showing the spill occurring[3], or any other evidence required by Louisiana jurisprudence. That

---

[3] Given the video recording entered into evidence as R. Doc. 25-7 showing the Skinners in the store and Ms. Skinner's fall, it can be inferred that there was constant video surveillance of the area prior to the fall that might have shown when the spill occurred.

10

failure is fatal to her claim. Absent such evidence, she fails to establish a *prima facia* case on the element of notice as required in Section 9:2800.(6)(B)(2).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Wal-Mart's motion for summary judgment, R. Doc. 25, is **GRANTED**. All Plaintiff's claims filed against Wal-Mart in this matter are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 4th day of February, 2026.

_____
ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE